UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JB AVIATION, and JEFFERSON BRAMBLE,

                    Plaintiff,                    **MEMORANDUM AND ORDER**
                                                         14 CV 5175 (DRH) (AKT)
      - against -

R AVIATION CHARTER SERVICES, LLC, and
JOHN ROSATTI,

                    Defendants.
----------------------------------------------------------X
**APPEARANCES:**

**ANTHONY A. CAPETOLA**
Attorney for Plaintiffs
2c Hillside Avenue
Williston Park, NY 11596
By:    Anthony A. Capetola, Esq.

**SCHLACTER & ASSOCIATES**
Attorneys for Defendants
450 Seventh Avenue
Suite 1308
New York, NY 10123
By:    Jed R. Schlacter, Esq.
           Bret I. Herman, Esq.

**HURLEY, Senior District Judge:**

Plaintiffs JB Aviation ("JBA") and its member Jefferson Bramble ("Bramble") (collectively "plaintiffs") bring this action against R Aviation Charter Services, LLC ("RACS") and John Rosatti ("Rosatti"), the manager of RACS, (collectively "defendants") asserting breach of contract, unjust enrichment, and misrepresentation claims. Presently before the Court is defendants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), for improper venue pursuant to Rule 12(b)(3), and for failure to state a claim pursuant to Rule 12(b)(6). In the alternative, defendants move to transfer venue to

1

the Southern District of Florida pursuant to 28 U.S.C. § 1404. For the reasons set forth below, the motion to dismiss is granted in part and denied in part and the motion to transfer venue is denied.

## BACKGROUND

The following facts are taken from plaintiffs' Complaint.

Plaintiffs allege that in June of 2010, the parties entered into a contract in which plaintiffs agreed to act as a private aircraft broker for defendants, and defendants agreed to pay plaintiffs one and one half percent (1.5 %) of the sale price of any aircraft purchase deal entered into by defendants that was facilitated and/or brokered by plaintiffs (the "Brokerage Agreement"). Pursuant to the Brokerage Agreement, the defendants also agreed to reimburse plaintiffs for any and all costs incurred by plaintiffs in carrying out those duties as defendants' broker, including, but not limited to, costs of travel/transportation, lodging, and dining expenses.

In January of 2011, plaintiffs presented a Gulfstream Model GIV Aircraft, Serial Number 1066 ("the Gulfstream") to defendants for their consideration and purchase from Aero Toy Store ("Seller"). Defendants then instructed plaintiffs to draft and forward to the Seller a letter of intent conveying an initial offer for the purchase of the Gulfstream. The Seller rejected defendants' first offer, and plaintiffs resumed efforts in seeking out an alternative aircraft. In April of 2011, the price of the Gulfstream was reduced. Plaintiffs conveyed this information to defendants, who instructed plaintiffs to draft and forward a second letter of intent ("the Letter of Intent") to the Seller conveying another offer for the purchase of the Gulfstream. Defendants signed the Letter of Intent on or about May 9, 2011 and the Seller signed it on May 10, 2011. The Letter of Intent states that "Purchaser shall pay 1.5% of sale price to buyer's agent (JB Aviation, LLC Westchester County Airport 2 Hangar Road, White Plains NY 10604)."

On or about July 19, 2011, defendants and the Seller executed an Aircraft Purchase and Sale Agreement for the Gulfstream (the "Purchase Agreement"). Article Seven, paragraph 15 of that agreement states that "[e]ach party . . . shall bear its own transactional costs and expenses including, without limitation, any brokers' commissions."

Defendants asked Bramble to take on the additional role of project manager, which would entail managing the process of securing the Gulfstream's status as air-worthy. Plaintiffs claim that the parties agreed that in return for Bramble's project management services, Bramble was given the chief pilot position for the Gulfstream, and guaranteed to receive a salary "conforming to the average salary for a pilot of The Gulfstream" (the "Project Management Agreement"). (Compl. ¶ 27.) Pursuant the Project Management Agreement, defendants also agreed to reimburse Bramble for the costs and expenses associated with his project management duties, in the same manner as defendants had previously done regarding his role as broker. Plaintiffs allege that Bramble expended approximately three thousand hours of time, efforts, and energy in facilitating the air-worthiness of the Gulfstream. They claim that he spent years acting as project manager, foregoing other money making ventures and endeavors.

In December of 2011, Rosatti informed Bramble that he had hired two pilots for the Gulfstream, and that Bramble would not be retained as the Chief Pilot. In response, Bramble demanded that Rosatti provide adequate compensation and fair wages for the substantial time, effort, and energy Bramble expended in his role as project manager for the Gulfstream, but Rosatti refused to provide such compensation. Plaintiffs now claim that defendants have breached the Project Management Agreement in failing to retain Bramble as Chief Pilot of the Gulfstream. They also claim that defendants have failed to make payments due under the Brokerage Agreement.

**DISCUSSION**

**I. Motion to Dismiss Pursuant to 12(b)(2)**

On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of establishing jurisdiction over the defendant. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Where, as here, the parties have not yet conducted discovery, plaintiff may defeat defendant's Rule 12(b)(2) motion "by making a prima facie showing of jurisdiction by way of the complaint's allegations, affidavits, and other supporting evidence." *Mortg. Funding Corp. v. Boyer Lake Pointe, L.C.*, 379 F. Supp. 2d 282, 285 (E.D.N.Y. 2005). Moreover, given the early stage of the proceedings here, the Court must view the pleadings in a light most favorable to the plaintiff, *see Sills v. The Ronald Reagan Presidential Found., Inc.*, 2009 WL 1490852, *5 (S.D.N.Y. May 27, 2009), and when evidence is presented, "doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party," *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 80 (2d Cir. 1993). However, the Court is not bound by conclusory statements, without supporting facts. *Jazini v. Nissan Motor Co. Ltd.,* 148 F.3d 181, 185 (2d Cir. 1998).

In a diversity case, a federal district court exercises personal jurisdiction over a party in accordance with the law of the forum state, subject to the requirements of due process under the United States Constitution. *See Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001). In New York, courts may exercise either general or specific jurisdiction over defendants. General jurisdiction allows courts in New York to adjudicate *all* claims against an individual or a corporation, even those unrelated to its contacts with the state. *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). In contrast, specific jurisdiction "depends on an affiliation between the forum [state] and the underlying controversy,

4

principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (internal quotation marks and citations omitted).

Here, plaintiffs contend only that defendants are subject to specific jurisdiction under New York's long-arm statute, and in particular the "transacting business" provision of C.P.L.R. § 302(a)(1). That provision states that "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state." Pursuant to this provision of the long arm statute, a "party need not be physically present in the state at the time of service" in order for the court to obtain personal jurisdiction over that party. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 787 (2d Cir. 1999). To extend personal jurisdiction to any nonresident under Section 302(a)(1), however, two conditions must be satisfied. First, the nonresident must have "purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." *Id.* (internal quotation marks and citation omitted). Second, there must be a "substantial nexus" between the business transacted in the state of New York and the cause of action. *Beeney v. InSightec, Inc.*, 2014 WL 3610941, at *2 (S.D.N.Y. Jul. 7, 2014). "Ultimately, the analysis must focus on the nature and quality of the individual defendant's contact with the forum and whether such contact has a strong relationship to the claims based on the totality of the circumstances." *Id*. at *3.

With regard to the first condition, the Second Circuit has held:

> The question of whether an out-of-state defendant transacts business in New York is determined by considering a variety of factors, including: (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether

principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (internal quotation marks and citations omitted).

Here, plaintiffs contend only that defendants are subject to specific jurisdiction under New York's long-arm statute, and in particular the "transacting business" provision of C.P.L.R. § 302(a)(1). That provision states that "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state." Pursuant to this provision of the long arm statute, a "party need not be physically present in the state at the time of service" in order for the court to obtain personal jurisdiction over that party. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 787 (2d Cir. 1999). To extend personal jurisdiction to any nonresident under Section 302(a)(1), however, two conditions must be satisfied. First, the nonresident must have "purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." *Id.* (internal quotation marks and citation omitted). Second, there must be a "substantial nexus" between the business transacted in the state of New York and the cause of action. *Beeney v. InSightec, Inc.*, 2014 WL 3610941, at *2 (S.D.N.Y. Jul. 7, 2014). "Ultimately, the analysis must focus on the nature and quality of the individual defendant's contact with the forum and whether such contact has a strong relationship to the claims based on the totality of the circumstances." *Id*. at *3.

With regard to the first condition, the Second Circuit has held:

> The question of whether an out-of-state defendant transacts business in New York is determined by considering a variety of factors, including: (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether

> the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendants] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996) (internal citations omitted).

Here, plaintiffs do not dispute that the defendants are Florida-based entities, as Rosatti is a resident of Florida and RACS was organized under Florida law and has its principal place of business in Florida. However, they argue that "[a] plain reading of the Complaint establishes that defendants transacted business in New York State by seeking out the Plaintiff company, a New York based LLC, and Plaintiff Bramble, a New York resident, and thereafter transacting with same for professional services in both: (1) finding and brokering an aircraft purchase; and (2) acting as defendants' project manager regarding the flight worthiness of the subject aircraft." (Pls.' Mem. in Opp'n ¶ 19.)

### A. *Whether the Court Has Personal Jurisdiction Over Plaintiffs' Claims Relating to the Brokerage Agreement*

Looking first at plaintiffs' claims against Rosatti relating to the Brokerage Agreement and applying the factors mentioned above, plaintiffs' allegations along with the Declaration of Jefferson Bramble (the "Bramble Declaration") set forth a prima facie case of personal jurisdiction over Rosatti. According to Bramble, the Brokerage Agreement between Rosatti and Bramble was negotiated and executed in New York. Bramble explains that he met Rosatti in New York in 2009 through Rosatti's attorney. At that time, the two discussed, *inter alia*, Bramble's experience finding and brokering the purchases and sales of aircrafts for individuals

6

and companies. (Bramble Decl. ¶ 2.) According to Bramble, in 2010, "Rosatti called a business meeting with [Bramble] at his car dealership in Brooklyn New York. (*Id*. ¶ 3.) At that meeting, Rosatti expressed interest in retaining Bramble to find and secure an airplane for his purchase. (*Id*.) Bramble claims that they conducted negotiations "which, by the end of the meeting, led to a definite agreement under which [he] would search out and secure a desirable aircraft for Rosatti, and in return [he] would receive a 1.5% brokers commission on the purchase price of the aircraft, in addition to [his] direct reimbursement by Rosatti for travel and lodging expenses" incurred in the pursuit of the aircraft. (*Id*.) Bramble states that from that meeting forward, he worked tirelessly to search out an aircraft, and "on multiple occasions, Rosatti flew in to New York, accompanied by [his lawyer], to meet with [him] and discuss the progress of the search." (*Id*. ¶ 6.) Bramble recalls at least one occasion where Rosatti flew into the Westchester County Airport and met at Bramble's office in White Plains to discuss the details of the agreement and status. (*Id*.) These allegations suggest that Rosatti had a contractual relationship with the plaintiffs in New York, that the Brokerage Agreement was both negotiated and executed in New York, and that Rosatti visited New York on multiple occasions regarding the Brokerage Agreement. Although both the Letter of Intent and the Purchase Agreement specify that they are to be governed by Florida law, (*see* Ex. A to Complaint, Letter of Intent, at 4 and Ex. B to Complaint, Purchase Agreement ¶¶ 7.22-23), there is no dispute that plaintiffs were not signatories to those documents, which were signed only by Rosatti and the Seller. Therefore, the factors enumerated above weigh in favor of a finding that Rosatti transacted business in New York. As for the second part of the analysis, plaintiffs have set forth a substantial nexus between Rosatti's contacts with New York and the claims regarding the Brokerage Agreement, which as described above, Rosatti negotiated and met with plaintiffs about in New York.

Moreover, the Court concludes that plaintiffs have set forth a prima facie showing that subjecting Rosatti to jurisdiction in New York on the Brokerage Agreement claims would not violate due process. "In order to comply with the Due Process Clause of the United States Constitution, the exercise of long-arm jurisdiction by New York must be based on the defendant's establishment of minimum contacts with the forum state such that the suit does not offend traditional notions of fair play and substantial justice. *Bluestone Capital Partners, L.P. v. MGR Funds Ltd.*, 1999 WL 322658, at *4 (S.D.N.Y. May 20, 1999) (internal quotations marks and citations omitted). "[I]n determining whether the due process requirement is met, courts conduct 1) a minimum contacts inquiry, and 2) a reasonableness inquiry." *Id*. at *5. "Under the minimum contacts analysis, a defendant must have purposefully availed itself of the privilege of conducting activities within the forum state," in order to ensure that "the defendant will reasonably anticipate being haled into court in the forum state." *Id*. (internal quotation marks and citation omitted). Here, Rosatti's contractual relationship with Bramble in New York and visits to New York to develop that relationship constitute a prima facie showing that Rosatti purposely availed himself of the privilege of conducting business in New York.

With regard to the second part of the due process analysis, "courts look to the following factors in determining the reasonableness of the exercise of jurisdiction: 1) the burden that the exercise of jurisdiction will impose on the defendant; 2) the interests of the forum state in adjudicating the action; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and the 5) shared interest of the states in furthering substantive social policies." *Id.* Defendants do not make any specific arguments challenging the reasonableness of jurisdiction, and the Court finds that New York has a substantial interest in the litigation given that plaintiff,

a New York resident, allegedly incurred damages as a result of the Brokerage Agreement, which was executed in New York. Thus, the Court finds that plaintiffs have set forth a prima facie case of jurisdiction over Rosatti in relation to the claims arising from the Brokerage Agreement.

The Court, however, reaches a different conclusion regarding RACS. According to the Bramble Declaration, RACS was not incorporated until 2011. (Bramble Decl. ¶¶ 9, 11.) As a result, RACS had no contacts with New York in relation to the negotiation and execution of the Brokerage Agreement in 2010. Its mere existence at the time that the Brokerage Agreement was breached is not sufficient to satisfy RACS's transacting of business in New York. Moreover, RACS certainly cannot be held liable for breach of the Brokerage Agreement, to which, as neither party disputes, it was not a party.[1]

### B. *Whether the Court Has Personal Jurisdiction Over Plaintiffs' Claims Relating to the Project Management Agreement*

With respect to the claims relating to the Project Management Agreement, the Court also finds that plaintiffs have not demonstrated a prima facie case of personal jurisdiction over either Rosatti or RACS. Although the Complaint alleges that both Rosatti and RACS had an ongoing contractual relationship with Bramble, a New York resident, for project management services, neither the Complaint nor the Bramble Declaration contain any other facts to suggest that any of the other factors weigh in favor of jurisdiction. Specifically, although Bramble states that at Rosatti's first meeting with Bramble in New York in 2009, they discussed Bramble's qualifications as a pilot and experience in project management, (Bramble Decl. ¶ 2), there are no facts suggesting that the Project Management Agreement, which was not executed until 2011

---

[1] Although plaintiffs point out that the Letter of Intent and Purchase Agreement indicate that RACS was to pay a brokerage commission to JB Aviation in New York, the Court reiterates that plaintiffs were not parties to either of those agreements, and therefore, there was no mutual assent to be bound by the provisions regarding the brokerage commissions.

was negotiated in New York or that defendants travelled to New York in relation to the performance of this contract. Moreover, plaintiffs have not articulated any reason why the Court should view Rosatti's contacts with New York relating to the Brokerage Agreement as sufficiently related to the Project Management Agreement. The Court will not find jurisdiction over the project management claims based on the sole fact that Bramble is a New York domiciliary, especially where the subject of the contract, the Gulfstream, was delivered to Florida. (*See* Ex. B to Complaint, Purchase Agreement, ¶ 3.2.) Therefore, only the claims against Rosatti relating to the Brokerage Agreement remain.[2]

### C. *Whether Transfer Pursuant to 28 U.S.C. § 1631 is Appropriate*

Having found that it lacks jurisdiction over certain claims, the Court must face the question then of whether to transfer this action pursuant to 28 U.S.C. § 1631, which provides the following:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interests of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

Defendants argue that this case should be transferred to the Southern District of Florida and rely on *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 257 F. Supp. 2d 717 (S.D.N.Y. 2003), where the Court noted that the relevant consideration in determining whether to transfer pursuant to § 1631 is "whether the interests of justice require transfer or dismissal"

---

[2] Since plaintiffs' fourth cause of action seeking a constructive trust upon Defendants' interest in the Gulfstream relates solely to damages sought as a result of a breach of the Project Management Agreement, that claim is dismissed without prejudice to being pursued in an appropriate jurisdiction.

(internal quotation marks omitted).  In that case, the Court found that the interests of justice "clearly require[d] transfer" because plaintiffs' claim would be barred by the statute of limitations if they had to commence litigation in the transfer district.  *Id*. at 734.  Here, however, defendants have not demonstrated that a transfer is in the interests of justice, and plaintiffs argue, as discussed more fully in Part III of this opinion, that a transfer is against the interests of justice.  As a result, the Court declines to transfer the case pursuant to § 1631.

II.     **Motion to Dismiss Claims Against Rosatti Pursuant to 12(b)(6)**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  The plausibility standard is guided by two principles.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)); *accord Harris v. Mills,* 572 F.3d 66, 71–72 (2d Cir. 2009).  First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.  Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.  *See Twombly,* 550 U.S. at 555.  Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss.  *Iqbal,* 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

11

The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly,* 550 U.S. at 556–57) (internal citations omitted); *see In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; accord *Harris*, 572 F.3d at 72.

Defendants argue that any claims based on a breach of the Brokerage Agreement should be dismissed against Rosatti because that agreement is unenforceable pursuant to New York's statute of frauds, N.Y. Gen. Obl. Law §5-701(a)(10). The Court notes, however, that even assuming that the agreement was not committed to writing, the agreement as alleged does not violate New York's statute of frauds. Pursuant to that statute, while certain types of brokerage agreements must be in writing, "agreements to pay compensation for services rendered in the sale of goods, such as airplanes are not among them." *Gentile v. Conley*, 636 F. Supp. 2d 246, 253 (S.D.N.Y. 2009). "The only thing that might take the contract out of the statute would be if the agreement *by its terms* could not be performed within one year." *Id*. (citing Gen. Obl. L. § 5-701(a)(1)). However nothing in the Complaint suggests that plaintiffs could not have procured an aircraft within one year. As a result, plaintiffs' breach of contract claim as alleged is not barred by the statute of frauds.[3] The same is true for plaintiffs' unjust enrichment claim.

---

[3] Defendants also argue that Rosatti should not be held individually liable for breach of the Brokerage Agreement because he entered into it on behalf of RACS. As previously noted, however, plaintiffs allege that RACS did not exist at the time of the Brokerage Agreement's execution, and therefore, Rosatti could not have entered into the Brokerage Agreement on behalf of RACS.

*Compare Tower Int'l, Inc. v. Caledonian Airways, Ltd.*, 133 F.3d 908 (2d Cir. 1998) (holding that inability to satisfy statute of frauds bars unjust enrichment claim).

However, plaintiffs' misrepresentation claim fails. Defendants correctly point out that "under New York law, where a fraud claim arises out of the same facts as plaintiffs' breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." *Telecom Int'l Am. Ltd. V. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (citations and internal quotation marks omitted). Such is the case here, where plaintiffs' fraud claim alleges that defendants "never intended" to pay plaintiffs the 1.5% brokerage commission (Compl. ¶ 61) and failed to disclose at the time the Project Management Agreement was entered into that they "intended to retain other pilots for the Gulfstream" (*id*. ¶ 63). As a result, plaintiffs' fraud claim is dismissed.

## III.   Venue

Defendants argue that should any of plaintiffs' claims survive under 12(b)(2) and 12(b)(6), this action should be dismissed pursuant to 12(b)(3) for improper venue "or at the very least transferred to the Southern District of Florida." (Defs.' Mem. in Supp. at 9.)

When a defendant challenges the venue of the court, the plaintiff has the burden to establish that venue is proper. *See Cold Spring Harbor Lab. v. Ropes & Gray LLP,* 762 F. Supp. 2d 543, 551 (E.D.N.Y. 2011). Courts may consider materials outside the pleadings when deciding a motion for improper venue. *See e.g., Martinez v. Bloomberg LP,* 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012). "If the court chooses to rely on pleadings and affidavits" as opposed to conducting an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of venue." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (internal quotation

marks, citation, and brackets omitted). In analyzing whether a plaintiff has made the requisite showing, courts "view all the facts in a light most favorable to plaintiff." *Phillips v. Audio Active Ltd.,* 494 F.3d 378, 384 (2d Cir. 2007).

A civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Here, plaintiffs contend that their suit satisfies the second prong in that a substantial part of the events giving rise to their claim occurred in New York. According to the Second Circuit, "for venue to be proper [under §1391(b)(2)], *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co.*, 417 F.3d at 357. "Courts making venue determinations in contract disputes have looked to such factors as where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Id*. (internal quotation marks and citations omitted).

Here, plaintiffs have set forth sufficient facts to make a prima facie showing that venue is proper in the Eastern District of New York with respect to the remaining claims. As explained in the Bramble Declaration, Rosatti negotiated and executed the Brokerage Agreement at Rosatti's car dealership in Brooklyn, which is located in the Eastern District of New York. This is sufficient to constitute a prima facie showing that the Eastern District of New York is an

appropriate venue under 28 U.S.C. § 1391(b)(2). *See id*. at 357-58 (finding that venue would be appropriate in Southern District of New York if plaintiff could prove that that insurance policy was negotiated and executed there).

Defendants next argue that should the Court "decide that either of the Defendants are subject to personal jurisdiction in New York and that venue in this District were otherwise proper . . . , the Court should nonetheless transfer the action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a)." (Defs.' Mem. in Supp. at 13.) Under that statute, a federal district court may transfer a civil action "to any other district or division where it might have been brought" when transfer will serve "the convenience of parties and witnesses" or furthers "the interest of justice." 28 U.S.C. § 1404(a). On a motion to transfer, the movant bears the burden of establishing that the motion should be granted. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir. 1978), *cert denied,* 440 U.S. 908 (1979). Here the defendants must establish both (1) that the actions could have been brought in the proposed transferee district and (2) that transfer serves the convenience of parties and witnesses or is in the interests of justice. "In considering a motion to transfer venue, the court should give the plaintiffs' choice of forum substantial weight, and should not disturb that choice unless other factors weigh heavily in defendants' favor." *Adams v. Key Tronic Corp.,* 1996 WL 474172 (S.D.N.Y. Aug. 21, 1996.) (internal citations and quotation marks omitted). Moreover, "[i]t is difficult to catalogue the circumstances which will justify either granting or denying the remedy of transfer, and much is left to the discretion of the Court." *Skultety v. Penn. R.R. Co.,* 91 F. Supp. 118, 119 (S.D.N.Y. 1950.)

Even assuming that the Southern District of Florida is an appropriate venue, defendants have failed to meet their burden in demonstrating that transfer serves the convenience of the

15

parties and the witnesses or is in the interests of justice. In analyzing whether a transfer meets that standard, courts engage in a fact-specific inquiry into the following factors: "(1) convenience of the parties; (2) convenience of witness[es]; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) how best to serve the interest of justice, based on an assessment of the totality of material circumstances." *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 327-28) (E.D.N.Y. 2006). Here, defendants assert that "the Southern District of Florida is the most convenient forum for most, if not all, of the non-party witnesses." (Defs.' Mem. in Supp. at 15.) In support of this claim, defendants submit "Plaintiffs' Disclosure Pursuant to Fed. Civ. P. Rule 26(a)(1)," (Ex. 2 to Rosatti Decl.) in which plaintiffs list 24 witnesses, 17 of which are located in Florida and 1 of which is located in New York. However, defendants have not met their burden in demonstrating that transfer is warranted. Defendants rely only on plaintiffs' list of witnesses without any reference to their own and and have not provided the Court with any information regarding the likelihood of plaintiffs' witnesses to testify at trial or even a general statement of what the witnesses' testimony will cover. *See Wechslet v. Macke Int'l Trade, Inc.*, 1999 WL 1261251, at *6 (S.D.N.Y. Dec. 27, 1999) ("A party seeking to transfer based on the convenience of the witnesses must provide the court with a list of probable witnesses who will be inconvenienced by the current forum and a general statement of what the witnesses' testimony will cover in order for the moving party to meet its burden of proof."); *Skultety*, 91 F. Supp. at 120 (denying motion to transfer venue where "nowhere in the moving party's papers [did] there appear an allegation that the testimony of any of the listed parties [was] necessary or essential or

that they [would] in fact testify"). Moreover, defendants do not argue that transfer is appropriate based on any of the other factors. As a result, their motion for transfer pursuant to § 1404(a) is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion to transfer venue is denied, and defendants' motion to dismiss is granted in part and denied in part. To the extent plaintiffs' claims are dismissed pursuant to 12(b)(2) and 12(b)(6), this dismissal is without prejudice. Should plaintiffs choose to replead, an amended complaint must be served within thirty (30) days of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
       November 12, 2015

                                                                  /s/
                                          Denis R. Hurley
                                          Unites States District Judge