UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JB AVIATION, LLC, and JEFFERSON BRAMBLE,

                    Plaintiffs,                  **MEMORANDUM AND ORDER**
                                                            14 CV 5175 (DRH) (AKT)

        - against -

R AVIATION CHARTER SERVICES, LLC, and
JOHN ROSATTI,

                    Defendants.
------------------------------------------------------------X

**APPEARANCES:**

**BARROWS & TEHRANI PLLC**
Attorney for Plaintiffs
369 Lexington Avenue, 2nd Floor
New York, NY 10017
By:    Michael C. Barrows, Esq.

**THE LAW OFFICES OF ANTHONY A. CAPETOLA**
Attorney for Plaintiffs
2c Hillside Avenue
Williston Park, NY 11596
By:    Anthony A. Capetola, Esq.

**SCHLACTER & ASSOCIATES**
Attorneys for Defendants
450 Seventh Avenue
Suite 1308
New York, NY 10123
By:    Jed R. Schlacter, Esq.
           Bret I. Herman, Esq.

**HURLEY, Senior District Judge:**

       Plaintiffs JB Aviation ("JBA") and its member Jefferson Bramble ("Bramble") (collectively "Plaintiffs") commenced this action against R Aviation Charter Services, LLC ("RACS") and John Rosatti ("Defendant"), the manager of RACS, (collectively, the "Parties"), for breach of contract, unjust enrichment, and misrepresentation claims related to the

1

procurement of an aircraft. On November 12, 2015, the Court dismissed all claims against RACS for lack of personal jurisdiction. *JB Aviation v. R Aviation Charter Services, LLC*, 143 F. Supp.3d 37, 49 (E.D.N.Y. 2015). The Court also dismissed all claims against Rosatti on the same basis, except the claims for (i) breach of a brokerage agreement and (ii) unjust enrichment. *Id.* at 47.

Presently before the Court is Defendant's motion for summary judgment pursuant to Rule of Civil Procedure ("Rule") 56, seeking dismissal of the claim regarding breach of the alleged oral brokerage agreement. Defendant largely neglects to address the remaining claim for unjust enrichment, however, this is immaterial because Defendant's motion is denied for the reasons stated below.

## PRELIMINARY MATTERS

Pursuant to Local Civil Rule 56.1, the moving party is required to submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which there is no genuine issue to be tried," together with "citation[s] to evidence which would be admissible, set forth as required by Fed .R. Civ. P. 56(c)." *See* Local R. 56.1(a), (d). Defendant largely satisfied this obligation, although his Rule 56.1 statement is notably missing certain citations. In response, Plaintiffs were required to provide "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party" followed by citations to admissible record evidence. *See* Local R. 56.1(b), (d). In breach of their obligation, Plaintiffs failed to submit a responsive statement.

Local Rule 56.1 subsection (c) instructs that each paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the summary judgment motion "unless specifically controverted by a correspondingly numbered paragraph in the

statement required to be served by the opposing party." Local R. 56.1(c); *see also Gianulluo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). However, "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

While the Court has discretion "to overlook a party's failure to comply with local court rules," *id.* at 73, the Court declines to wholly ignore Plaintiffs' failure to submit a response to Defendant's Rule 56.1 statement. Plaintiffs contest certain facts in their opposition papers, however they do not properly support these assertions with citation to material in the record in accordance with Federal Rule of Civil Procedure 56(c). Accordingly, all material facts set forth in Defendant's Rule 56.1 statement are deemed admitted to the extent that they are adequately supported with record evidence. Given that Defendant does not assert certain dispositive facts in his Rule 56.1 statement, such as the existence or lack thereof of an oral brokerage agreement, Plaintiffs' oversight is not entirely detrimental to their position.

Having addressed the above threshold issues, attention will be directed to the purported absence of material facts which serve as the basis for Defendant's motion for summary judgment.

## BACKGROUND

The following facts are undisputed, unless otherwise stated.

In mid-2010, Plaintiff Bramble and Defendant met and discussed Defendant's intention to purchase an aircraft and Plaintiff Bramble's experience in the aviation industry. (Bramble

3

Depo. At 89.) Plaintiffs allege that at this meeting, the Parties entered into: (1) an oral brokerage agreement by and through which Defendant would pay Plaintiff 1.5% of the purchase price of an aircraft, and (2) a consultancy arrangement regarding reviewing the condition of any of the planes being considered for acquisition. (Bramble Depo. at 89–90.) Defendant contends that there was no such oral brokerage agreement. (Rosatti Declaration at ¶ 12.) Both parties agree that there was no written brokerage agreement, nor any draft or proposal of a written brokerage agreement. (Def's 56.1 at ¶¶ 1–3.)

Defendant claims that he was first shown the aircraft at issue—Gulfstream IV, Serial Number 1066 ("Aircraft 1066")—in 2010 at Aero Toy Store, LLC, by the store owner Mayer Shirazipour ("Shirazipour"). (Rosatti Decl. at ¶ 4.) Plaintiff Bramble, on the other hand, contends that he was the first person to show Aircraft 1066 to Defendant, after he independently identified the plane in January 2011. (Bramble Decl. at ¶ 12.) Both parties agree that Defendant authorized Plaintiff Bramble to work with Defendant's attorney to make a written bid on Aircraft 1066. (Rosatti Decl. at ¶ 8.) In January 2011, Plaintiff Bramble drafted a Letter of Intent ("LOI"). (*Id.*) The LOI included a clause stating that "Seller shall pay a 1.5% of sale price to buyer's agent (JB Aviation, LLC Westchester County Airport 2 Hangar Road, White Plans NY 10604)." (Ex. A to Plaintiff's Mem. at 106.)

After the offer in the January 2011 LOI was rejected, Plaintiff drafted a second LOI in May 2011. (Ex. L to Plaintiff's Mem. at 1.) The second LOI stated that "Purchaser shall pay a 1.5% of the sale price to buyer's agent (JB Aviation, LLC Westchester County Airport 2 Hangar Road, White Plans NY 10604)." (Ex. F to Herman Aff. at 3.) Buyer was defined as RACS, and Defendant as manager. (*Id.* at 1.)

Plaintiff Bramble was involved in negotiating the price, securing the loan, and drafting

4

the Purchase and Sale Agreement ("PSA") for Aircraft 1066. (Ex. L to Plaintiff's Mem.; Ex. G; Ex. M to Plaintiff's Mem. at 2.) The final Aircraft PSA, executed on July 19, 2011, omitted the aforementioned clause regarding paying a 1.5% of sale price to buyer's agent. (Ex. H to Herman Aff.) The PSA does not reference Plaintiffs, however it does include a clause stating that each party to the PSA must bear its own transactional costs, "including, without limitation, any broker's commissions[.]" (*Id.* at §7.15.) Defendant ultimately acquired Aircraft 1066, though Plaintiff was not aware of or involved in the closing. (Bramble Depo. at 96.)

Plaintiffs issued six invoices to Defendant from May 24, 2011 to January 2, 2012, totaling $60,000, all of which have been paid in full. (Ex. C to Herman Aff.; Rosatti Decl. at ¶ 12.) Five of these invoices state that they are for consulting fees, and two of these five also say "Project Manager." (Ex. C to Herman Aff. at 48–52.) Plaintiff asserts that these invoices were for upfront expenses, such as travel, and project management expenses. (Bramble Depot. at 101.) However, Defendant claims that these invoices were for "consulting services" and covered all of the services rendered to Defendant related to his aircraft search and acquisition. (Rosatti Decl. at ¶ 12.)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment, pursuant to Rule 56, is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When making this determination, a court must view all

facts "in the light most favorable" to the non-movant, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), and "resolve all ambiguities and draw all permissible factual inferences in favor of the [non-movant]," *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Thus, "[s]ummary judgment is appropriate [only] where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts demonstrating that there is a genuine dispute of material fact to be tried. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586-87), and "may not rely on conclusory allegations or unsubstantiated speculation," *Id.* (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination[s] of summary judgment motions," *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the [non-movant] will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the [non-

6

movant's] case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady*, 863 F.2d at 210-11) (internal quotation marks omitted). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible." *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial." *Crawford*, 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## II. Elements of Breach of Contract Claim

Under New York law, there are four elements of a cause of action for breach of contract: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages suffered as a result of the breach. *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 450–51 (S.D.N.Y. 2014) (citing *Beautiful Jewellers Private Ltd. v. Tiffany & Co.*, 438 Fed. Appx. 20, 21–22 (2d Cir. 2011). As explained infra, the Court finds that there are material questions of fact regarding element (1) the existence of the oral brokerage agreement, and element (2) whether Plaintiffs performed the contract by finding Aircraft 1066.

## III. Summary of Arguments

### A. *Whether There Was a Brokerage Agreement*

As discussed above, Defendant contends in his motion for summary judgment that there was never any brokerage agreement. However, he does not include this in his Rule 56.1 statement. Rather, he only states that there was "no written brokerage agreement," no draft or proposal of such an agreement, and no e-mails or invoices referencing such an agreement. (Def.'s 56.1 at ¶ ¶ 2, 3.)

By contrast, Plaintiff Bramble contends that there was an oral brokerage agreement that was entered into in June 2010. (Bramble Depo. at 95.) Bramble claims that the Parties agreed that Plaintiff Bramble would receive a 1.5% brokers commission on the purchase price of an aircraft, in addition to reimbursement for travel and lodging expenses incurred therein. (*Id.*)

"Under New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document." *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). As the Court noted in its November 12, 2015 decision granting in part and denying in part Defendants' motion to dismiss, an oral brokerage agreement for an aircraft would not violate the New York statute of frauds unless "the agreement by its terms could not be performed within one year." *Gentile v. Conley*, 636 F. Supp. 2d 246, 253 (S.D.N.Y. 2009) (citing Gen. Oblig. L. § 5-701(a)(1). As the Court concluded in its prior decision, and as it concludes again here, nothing in the Complaint or other submissions suggest that Plaintiffs could not have procured an aircraft within one year. *See JB* Aviation, 143 F. Supp.3d at 47.

A perusal of the Complaint indicates that there is no claim for an implied-in-fact contract. Rather, Plaintiffs seem to claim that the Parties entered into an express contract for Plaintiffs to act as a private aircraft broker and for Defendant to pay Plaintiffs an agreed upon percentage of the sales price of the aircraft.[1] Therefore, the Court agrees with Defendant that Plaintiffs' implied-in-fact contract argument in their opposing papers is superfluous.

---

[1] "Under New York law, absent a written agreement between the parties, 'a contract may be implied where inferences may be drawn from the facts and circumstances of the case and the intention of the parties as indicated by their conduct.'" *Bear Sterns Inv. Products, Inc. v. Hitachi Automotive Products (USA), Inc.*, 401 B.R. 598, 615 (S.D.N.Y. 2009) (quoting *Matter of Boice*, 226 A.D.2d 908, 910 (3d Dep't 1996)). By contrast, an express contract arises from declared intent. *See id.*

Nevertheless, Plaintiffs have otherwise presented sufficient evidence for a reasonable fact-finder to conclude that an oral brokerage agreement existed between the parties, requiring Defendant to pay 1.5% of the purchase price of the aircraft to Plaintiffs. For example, the first draft of the LOI states that JB Aviation, LLC is buyer's agent. (Ex. A to Plaintiff's Mem. at 106.) The second draft of the LOI—which Defendant signed—states that JB Aviation, LLC is buyer's agent *and* that Purchaser (R Aviation Charter Services, LLC) shall pay "a 1.5% of sale price to buyer's agent." (Ex. F to Herman Aff. at 3.) Defendant received a copy of this second LOI by e-mail on April 16, 2011, but did not sign it until May 9, 2011, so he had ample time to review the document. (Ex. L to Plaintiff's Mem. at 1; Ex. F to Herman Aff. at 3.) Defendant claims that the fact that these provisions were excluded from the final PSA means that there was never any oral brokerage agreement. However, PSA ¶ 7.15 provides: "Each party to this Agreement shall bear its own transactional costs and expenses including, without limitation, any brokerage commissions and/or attorney's fees." (Ex. H to Herman Aff. at 15.) Thus, the exclusion from the PSA of a specific 1.5% fee to be paid to Plaintiffs does not ipso facto foreclose the possibility that there was an oral brokerage agreement because the requirement to pay Plaintiffs' fee would have been encompassed in the broadly stated provision in PSA ¶ 7.15.

Furthermore, Defendant admits in his deposition that Plaintiff Bramble traveled to Ft. Lauderdale, Florida; Pittsburgh, Pennsylvania; Las Vegas, Nevada; and Tulsa, Oklahoma to view aircrafts on Defendant's behalf. (Ex. E to Plaintiffs' Mem. in Opp. at 118–19.) While Defendant claims these trips were merely to look over the condition of potential aircraft, this is contradicted by e-mails exchanged between Plaintiff Bramble and Defendant's attorney. (*See, e.g.,* Ex. F to Plaintiffs' Mem. at 2 (E-mail from Lee Goldberg, Defendant's attorney, to Plaintiff Bramble (June 13, 2010) (reply from Goldberg regarding information on an aircraft that Plaintiff

9

Bramble located, saying that Goldberg and Defendant were going to look at the aircraft and requesting the Plaintiff Bramble call him to discuss).) Moreover, Plaintiff Bramble was involved in negotiating financing for Defendant to acquire Aircraft 1066 and even had a hand in drafting the PSA. (Anzalone Decl. at ¶ 6; Bramble Decl. at ¶ 10; *see also* Ex. G to Plaintiffs' Mem.)

Defendant's contention that all of Plaintiffs' services were performed as part of a consulting arrangement is undermined by Plaintiff Bramble's communications on behalf of Defendant with other buyers and brokers, in which he is the primary point of contact with third parties and appears to be searching for planes. (*See, e.g.,* Ex. F to Plaintiffs' Mem. at 6 (E-mail from Tom Connelly, Independent Contractor for JB Aviation, LLC, to Plaintiff Bramble (Oct. 26, 2010) (discussing "29 aircraft for sale with pricing running from 5.0 million for an early model to 12.0 million for a 2006-7 model year" as well as thanking Plaintiff Bramble for forwarding information on another aircraft to Defendant's attorney).) Moreover, Gary Anzalone ("Anzalone"), the Senior Vice President of Aero Toy Stores at the time Aircraft 1066 was purchased, attests that his interactions with Plaintiff Bramble were as Defendant's agent. (Anzalone Decl. at ¶ 4.)

The evidence Defendant presents in support of his summary judgment motion, when considered in conjunction with Plaintiffs' submissions, is insufficient to establish that there are no genuine issues of material fact for trial regarding whether there was an oral brokerage agreement.

### B. *Whether Plaintiffs Performed Under the Brokerage Agreement*

Defendant argues in the alternative that even if there had been an oral brokerage agreement, Plaintiffs never performed their contractual obligation by finding Aircraft 1066. This claim gives rise to two sub-questions of fact: (1) whether Plaintiffs indeed found Aircraft 1066

for Defendant before Defendant had ever seen the plane himself; and (2) whether performance of the brokerage agreement required that Plaintiffs find Aircraft 1066 before Defendant had ever seen it (as opposed to finding it independently at a later point after the price had decreased along with performing other duties such as negotiating financing, drafting LOIs, reviewing the PSA, etc.). We will address each sub-question independently.

1. Whether Plaintiffs Found Aircraft 1066

Since the Court has deemed all material facts set forth in Defendant's Rule 56.1 statement admitted to the extent that they are adequately supported with record evidence, the Court will accept Defendant's assertion that he saw Aircraft 1066 in 2010 before Plaintiff Bramble knew of the aircraft. (Def.'s 56.1 at 4.) As we stated above, a "Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). However, here, Defendant has provided sufficient support for his assertions that he saw the aircraft for the first time before Plaintiffs brought it to his attention. (*See, e.g.*, Shirazipour Decl. at 2.) Thus, the Court concludes for purposes of this summary judgment motion that Plaintiffs did not find Aircraft 1066 before Defendant had already seen it.

2. Whether Performance of the Brokerage Agreement Required Locating Aircraft 1066 First

On the second question of fact, it is unclear based on the evidence in the record whether performance of the alleged oral brokerage agreement required Plaintiffs to find an aircraft that Defendant had never seen before. Defendant's Rule 56.1 Statement provides that "if an oral brokerage agreement existed, any brokerage commission to be paid to Bramble and/or JBA was

11

predicated on Bramble and/or JBA finding Aircraft 1066 for [Defendant]." (Def.'s 56.1 at 4.) However, Defendant cites to evidence in the record that does not support this assertion. While it is accurate that Plaintiff Bramble states in his deposition that the oral agreement entailed "finding [Defendant] the airplane as part of the brokerage and the percentage[,]" he also states that "[t]he agreement was 1.5 percent brokerage from the point of me finding the aircraft, negotiating the price, up to the signing of the purchase agreement." (Ex. B to Herman Aff. at 91, 101.) This suggests that the oral brokerage agreement entailed finding an aircraft, negotiating the price, and performing other related duties preparatory to the signing of the PSA.

Plaintiff Bramble presents sufficient evidence that he performed these concomitant duties. For example, Plaintiff Bramble was involved in negotiating the price down for Aircraft 1066, as confirmed by Defendant's assertion that Plaintiff Bramble drafted the two LOIs. (Def.'s 56.1 at 3.) Furthermore, Anzalone states:

> [E]xtensive efforts were taken by Mr. Bramble to ensure the Aircraft 1066 was airworthy and in suitable condition for Mr. Rosatti's purchase. To my knowledge, Mr. Bramble was instrumental in this n [sic] process, having personally traveled to and from [Aero Toy Store] on numerous occasions to resolve various issues, including managing delays from the maintenance facility, the various vender and the completion center[.]"

(Anzalone Decl. at ¶ 6.) Thus, if "finding" meant locating the aircraft at some time and performing other duties related to closing on such aircraft, then Plaintiffs present sufficient evidence for a reasonable fact-finder to conclude that Plaintiffs performed under the alleged oral brokerage agreement. The invoices that Defendant cites as definitive proof that Plaintiffs' actions were carried out as part of a consultant arrangement as opposed to a brokerage agreement are called into question by Plaintiff Bramble's deposition, in which he states that "Mr. Rosatti had to pay me up front for my expense, as part of the brokerage, and in the second agreement for the project management, he had to pay for that expense, as well, for me to oversee the entire

12

project[.]" (Bramble Depo. at 101.)  In other words, these invoices may have been for a range of services, some of which were part of or related to the alleged brokerage agreement, and others of which were separate or additional to the alleged brokerage agreement.  The fact that a later, currently unpaid, invoice lists duties such a negotiating the price under "Project Manager Summary of Duties and Responsibilities" does no suffice to eclipse the other evidence such as the LOIs, the e-mail correspondence, Anzalone's declaration, and Plaintiff Bramble's deposition for purposes of this summary judgment motion.  (*See* Ex. E. to Herman Aff. at 15.)

Defendant does not claim that Plaintiffs *never* located Aircraft 1066, nor does Defendant claim that he was responsible for alerting Plaintiffs to the existence of Aircraft 1066.  In fact, Defendant does not even offer evidence showing that he told Plaintiffs that he had previously seen Aircraft 1066 when Plaintiffs first presented it to him.  Rather, Defendant simply claims that he had seen Aircraft 1066 in 2010, before Plaintiff Bramble knew of the plane, and that the price was too expensive at that time.  (Def.'s 56.1 at 4; Rosatti Decl. at 2.)  Neither Defendant nor Plaintiffs cite any case law addressing what "finding" means in the present context, nor do they provide an industry standard for the term.  Thus, even if Defendant found Aircraft 1066 first, there is still a genuine issue of material fact for trial regarding whether Plaintiffs performed the oral brokerage agreement under its own terms.

Defendant has failed to demonstrate the absence of a material issue of fact vis-à-vis the adequacy of Plaintiffs' performance under the alleged oral brokerage agreement.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied.

**SO ORDERED.**

Dated: Central Islip, New York
September 5, 2017

/s/
Denis R. Hurley
Unites States District Judge